United States District Court
Middle District of Florida
Jacksonville Division

**RETINA-X STUDIOS, LLC,**

       *Plaintiff,*

v.                                 **NO. 3:13-cv-897-J-34PDB**

**ADVAA, LLC,**

       *Defendant.*

_____

# Report & Recommendation

Before the Court are four motions: **(1)** Retina-X Studios, LLC's third motion for a preliminary or permanent injunction, Doc. 36; **(2)** Retina-X's second motion for default judgment, Doc. 44; **(3)** Bitex Group, Ltd.'s motion to intervene, Docs. 45 (motion), 47 (response), 52 (reply); and **(4)** ADVAA, LLC's motion to set aside defaults entered against it, Docs. 56 (motion), 58 (response), 62 (reply), 65 (sur-reply). I recommend granting Bitex's motion to intervene, Doc. 45, granting ADVAA's motion to set aside the defaults, Doc. 56, denying as moot Retina-X's motion for default judgment, Doc. 44, and terminating Retina-X's motion for a preliminary or permanent injunction, Doc. 36, with permission to file, if it desires, another amended one that considers the new posture of the case and the new information that ADVAA and Bitex presented upon their appearances in the case.

# I.     Procedural History

Last July, Retina-X, a company that develops and sells software for smart-phone and computer monitoring, and the owner of the registered trademark MOBILE SPY, filed a complaint against ADVAA, Bitex, MTechnology LTD, and Pavel Daletski, alleging trademark infringement and unfair competition based on their use of its MOBILE SPY mark and their own MSPY mark. Doc. 1.

With the complaint, Retina-X filed a motion for a preliminary injunction. Doc. 2. The Court took the motion under advisement pending service of process. Doc. 5. But after a month with no apparent activity, the Court, on its own, denied the motion. Doc. 8. Later that day, Retina-X filed proof that ADVAA had been served a month earlier, Doc. 9, and a motion for default against it, Doc. 10. The clerk entered default, Doc. 11, and Retina-X filed a motion for default judgment, Doc. 12, and a renewed motion for a preliminary injunction, but this time against only ADVAA, Doc. 13.

At a hearing on the renewed motion for a preliminary injunction, the Court took the motion under advisement and directed Retina-X to supplement it. Docs. 17 (minutes), 18 (transcript), which Retina-X did, Docs. 20, 21 (amended exhibits), 22 (brief in support of motion). The Court expressed "a lot of concerns about whether injunctive relief is appropriate": the delay between the discovery of the alleged infringement and the filing of the case indicating no risk of imminent, irreparable harm; that Retina-X had served and named in the motion only ADVAA but sought to bind all of the defendants through an "in concert" theory; that MTechnology historically has responded to infringement allegations but, without having been

2

served, would not have an opportunity to do so here; and that the complaint, by vaguely referring to all of the defendants, did not allege any unlawful actions of ADVAA in particular. Doc. 18 at 2−3, 6−7, 9−11, 26−28. The Court also had a substantive concern that the MOBILE SPY mark might be descriptive rather than suggestive, requiring five years of exclusive use that the complaint's allegations appeared to undermine. *Id.* at 11−18, 20−25, 28−29.

In January, before the Court had ruled on Retina-X's motion for default judgment and amended motion for a preliminary injunction, Retina-X moved to amend its complaint to name only ADVAA as a defendant and to clarify ADVAA's role in the alleged infringement and unfair competition. Doc. 28. The Court granted the motion and denied as moot Retina-X's motion for default judgment. Doc. 29. Retina-X then filed an amended motion for leave to file an amended complaint. Doc. 30. The Court granted that motion too, concluding that the only difference between the permitted amended complaint and the proposed amended complaint was that the latter was verified. Doc. 31. The Court directed the clerk to file the proposed amended complaint as a standalone pleading and Retina-X to serve ADVAA with that pleading, observing that, if ADVAA again failed to respond, Retina-X should promptly move for default and default judgment again. Doc. 31. Because of the new operative pleading, the Court denied as moot the amended motion for a preliminary injunction. Doc. 34.

That month, Retina-X served ADVAA with the amended complaint, Doc. 35, and, in February, filed the pending third motion for a preliminary or permanent injunction, Doc. 36, and, when ADVAA again failed to respond, obtained another

default against it, Docs. 40 (motion), 41 (default). The Court took Retina-X's motion under advisement and directed it to file a motion for default judgment so that the Court could proceed directly to the merits of the action. Doc. 43. Retina-X thus filed the pending motion for default judgment. Doc. 44. But before the Court had an opportunity to rule on it, in March, Bitex, as the asserted proper party of interest, filed the pending motion to intervene, Docs. 45, 52, and, in May, ADVAA filed the pending motion to set aside the entries of default, Doc. 56, accompanied by a declaration of Aliaksei Ausiannikau. Doc. 57.

In light of that procedural history, a case management and scheduling report has not been filed, and discovery has not started.

## II.   Alleged Facts

### A.   *Original Complaint*

In the original complaint, Retina-X alleged the following facts about the originally named defendants and their alleged use of the MOBILE SPY and MSPY marks. MTechnology is a United Kingdom company with a California principal place of business. Doc. 1 ¶ 3. ADVAA is a California company with a California principal place of business and is MTechnology's subsidiary responsible for marketing and selling MTechnology's software in the United States. *Id.* ¶¶ 4, 7. Bitex is a Seychelles company with a Seychelles principal place of business that serves as MTechnology's agent and processes payments for it. *Id.* ¶¶ 5, 7. Daletski is Bitex's director or managing member and has been MTechnology's off-and-on director and chief executive officer. *Id.* ¶ 6. "Defendants" jointly own and operate www.mspy.com. *Id.* ¶

14. "Defendants" use the MOBILE SPY and MSPY marks on www.mspy.com, in advertising, and in communications with customers and potential customers, and changed their online payment system to the one that Retina-X uses. *Id.* ¶¶ 15, 16.

## B.  *Amended Complaint*

In the verified amended complaint against ADVAA only, Retina-X primarily re-alleges those same facts but omits all references to Bitex, MTechnology, and Daletski, changes "Defendants" to "Defendant," and adds that ADVAA tried without success to register the MSPY mark. Doc. 32.

## C.  *Motion to Intervene*

In its motion to intervene, Bitex represents the following facts about use of the MSPY mark. Doc. 45. Bitex—not ADVAA—is the vendor of mSpy software and the owner of both the "mspy" domain name and www.mspy.com. *Id.* at 2, 4, 9. ADVAA does not own the intellectual property rights to mSpy software. *Id.* at 2, 11. Bitex is seeking to register the MSPY and MY SPY marks and is opposing a third party's application for registration of the MY SPY mark. *Id.* at 9 n.1.

In its response to the motion to intervene, Retina-X counters that, in U.S. Patent and Trademark Office ("USPTO") filings in 2012 and 2013, ADVAA represented that it had owned and used the MSPY mark since 2011 without mention of Bitex, and Bitex did not try to register the MSPY mark until the day that it filed its motion to intervene. Doc. 47 at 2; Docs. 47-1, 47-3. (For its assertion that ADVAA had represented in the USPTO filings that it had used the MSPY mark since 2011, however, Retina-X attaches a USPTO filing in which ADVAA said that "the mark was

5

first used by the applicant **or the applicant's related company** … at least as early as 03/01/2011." Doc. 47-1 at 5. In that application, ADVAA does attach a screenshot from www.mspy.com that ADVAA says is "the applicant's website." *Id*.) The www.mspy.com website mentions MTechnology but not Bitex. Doc. 47 at 4. Before suing, Retina-X had sent infringement notices to two merchant service providers (Plimus in January 2012 and Avangate in April 2012), who forwarded them to MTechnology and Bitex. *Id.* at 3. Daletski responded for both MTechnology and Bitex, providing a United Kingdom e-mail address for MTechnology and a Seychelles land address for Bitex. *Id.* Retina-X tried to serve MTechnology and Daletski at California addresses to no avail. *Id.*; Docs. 47-4 to 47-7. Retina-X did not try to serve Bitex in the Seychelles because of the cost ($1500 to $3000) and time (approximately four months), and it "has never been able to determine the true roles of Bitex, MTechnology and Pavel Daletski." Doc. 47 at 4.

In its reply, Bitex adds that it owns the mSpy software and that ADVAA is not an actively operating company and is not responsible for marketing, distributing, or selling the mSpy software. Doc. 52 at 2–3. In a proposed answer to the amended complaint, Bitex admits that ADVAA is a California company but denies that ADVAA's principal place of business is in California, denies that ADVAA markets and sells mSpy software to United States citizens, and denies that ADVAA operates and sells software through www.mspy.com. Doc. 52-1 ¶¶ 3–4. Bitex admits that it owns the intellectual property rights to the MSPY mark, admits that it offers software to consumers under the mark, admits that it operates and sells mSpy

software through www.mspy.com, and admits that it uses Avangate to process payments. *Id.* ¶¶ 11, 13−16, 30, 40.

**D.    *Motion to Set Aside the Defaults***

In his declaration in support of ADVAA's motion to set aside the defaults, Mr. Ausiannikau represents the following facts about ADVAA and Bitex. Doc. 57. He is ADVAA's sole member, manager, and employee. *Id.* ¶ 2. He has a permanent residence card authorizing him to live in the United States. *Id.* ¶ 3. Daletski is his business associate, lives in the Ukraine, and serves as the chief executive officer of Bitex. *Id.* In May 2012, Daletski asked him to apply to register the MSPY mark in the United States. *Id.* He searched the internet and found www.trademarkia.com, which advertised simple trademark application and registration services. *Id.* ¶ 4. One of the fields for the online trademark application required the address for the applicant. *Id.* Without consulting a lawyer, he mistakenly thought that the applicant had to be a United States entity with a United States address. *Id.* He therefore filled out online forms to register ADVAA on The Company Corporation's website, www.incorporate.com. *Id.* ¶ 5. After receiving confirmation from The Company Corporation that California had approved ADVAA's registration, he completed an application on www.trademarkia.com to register the MSPY mark. *Id.* ¶¶ 6, 7. The website advertised: "When you request to file a trademark application through Trademarkia, a licensed U.S. trademark attorney manages your trademark filing from the law firm of Abhyanker P.C. in Mountain View, California. Abhyanker P.C. is the largest trademark filing law firm in the United States and for a very low cost,

you can elect to have them represent you in filing a trademark application." *Id.* ¶ 7.
The Abhyanker firm confirmed that it had filed the application but never contacted
him to ask questions or verify the application information and ultimately informed
him that the USPTO had refused to register the MSPY mark in view of Retina-X's
MOBILE SPY mark. *Id.* ¶¶ 8, 9. A few months later, in July 2013, The Company
Corporation sent him an e-mail attaching the summons and complaint, but he
thought they concerned the MSPY trademark application because he had
remembered that Retina-X's mark had been mentioned in documents concerning the
application. *Id.* ¶¶ 11, 12. He therefore forwarded the e-mail and similar e-mails to
Mr. Daletski and expected the Abhyanker firm to handle any responses. *Id.* He looked
at the documents but did not thoroughly review them or ask a lawyer to look at them.
*Id.* ¶ 11. He did not intend to willfully ignore any case-related documents. *Id.* ¶ 13.
He did not understand the nature of the documents because English is not his first
language and he has no experience with legal proceedings in the United States. *Id.*
He found out that ADVAA had been required to appear in this case after Bitex had
contacted a lawyer licensed in the United States and filed its motion to intervene. *Id.*
¶ 14. ADVAA does not own the MSPY mark or mSpy software or the intellectual
property rights to either, does not own the "mspy" domain name or www.mspy.com,
is not responsible for marketing, distributing, or selling mSpy software, and does not
have any information or documents relating to the marketing, distribution, or sales
of the mSpy software or the usage of the MSPY mark in commerce. *Id.* ¶ 15. ADVAA's
sole activity was registering the mark, and it is currently inactive. *Id.*

In its response, Retina-X counters that it had properly served ADVAA with the original complaint and original motion for a preliminary injunction, the renewed motion for a preliminary injunction, the Court's order setting a hearing on the motion, and the amended complaint and third motion for a preliminary injunction. Doc. 58 at 3–4. The summons stated on the front page, "A Lawsuit has been filed against you. Within 21 days after service of this summons on you … you must serve on the Plaintiff an answer to the attached Complaint." *Id.* at 4. It also sent an e-mail with the Court's order and the return of service for that order to ADVAA's counsel in the trademark proceedings (trademarks@rajpatent.com), and received a response from kristin@legalforcelaw.com that stated, "Thank you for your email. We have not been retained by the client in this matter." Doc. 58 at 3, 19. The USPTO would have served ADVAA's lawyer with any trademark actions, and neither Retina-X nor the MOBILE SPY mark is mentioned in the actions until page two in the first action and in the first attachment to that action. *Id.* at 5, 23–24, 27. The USPTO documents do not look like the documents here. *Id.* The second action included attachments of websites listing ADVAA as the software publisher and developer of mSpy. *Id.* at 6, 44, 46. A Google search uncovered articles stating that ADVAA is a developer of "Mobile Employee" software and two websites for mSpy that are associated with ADVAA. *Id.* at 6, 55–58.

In its reply to Retina-X's response in opposition to setting aside default, ADVAA attaches a screenshot from www.mspy.com identifying Bitex as the owner of the website and the distributor of software under the MSPY mark. Doc. 62 at 1 n.1.

ADVAA also asserts that the articles that Retina-X found through Google searches are hearsay, address unrelated software, and are factually incorrect. *Id.* at 2–3. ADVAA adds that, in June, the USPTO issued Examiner's Amendments for Bitex's trademark application for the MSPY and MY SPY marks stating, "The trademark examining attorney has searched the USPTO's database of registered and pending marks and has found no conflicting marks that would bar registration." *Id.* at 3; Doc. 62-2. In its sur-reply, Retina-X asserts that the examiner erred and, in any event, the examiner's finding has not yet been vetted through opposition. Doc. 65 at 2–3.

## III.   Analyses

The presumed challenges in identifying those responsible for alleged infringement in the online marketplace, compounded when multiple and foreign entities are involved, combined with Retina-X's varying allegations made without the benefit of discovery and its ultimate recognition that it "has never been able to determine the true roles of Bitex, MTechnology and Pavel Daletski," Doc. 47 at 4, make evident that naming the proper party or parties in interest has not been easy. *Compare, e.g.,* Doc. 1 ¶ 7 (Retina-X's original complaint allegation that ADVAA is a subsidiary of MTechnology) *with* Doc. 47 at 1 (Retina-X's contention in its opposition to Bitex's intervention that ADVAA is a subsidiary of Bitex); *and* Doc. 1 ¶¶ 14–16 (Retina-X's original complaint allegation that Bitex and the other originally named defendants market and sell mSpy software and jointly own and operate www.mspy.com) *with* Doc. 47 at 9 (Retina-X's contention in its opposition to Bitex's

intervention that "Bitex was just the company in the Seychelles that received the money.").

But now, two of the originally named defendants have appeared with mutual counsel to explain that Bitex is the proper party in interest and to defend against the infringement and unfair-competition claims on the merits. Docs. 45, 56. Their appearance with counsel alone undermines Retina-X's suspicion that it "was a victim of a shell game by foreign corporations." Doc. 47 at 5. Yet, relying principally on ADVAA's application to the USPTO in which ADVAA listed itself as the owner of the MSPY mark, Doc. 47-1, and rejecting Mr. Ausiannikau's reasonable explanation as to why that had occurred, Retina-X opposes Bitex's motion to intervene, Doc. 47, and ADVAA's motion to set aside the defaults, Docs. 58, 65, and persists in its motion for a preliminary or permanent injunction against ADVAA and anyone acting in concert with ADVAA, Doc. 36. As explained below, at least at this pre-discovery stage, Retina-X has not provided sufficient reason to reject ADVAA's and Bitex's representations, particularly in light of Retina-X's ultimate recognition that it has never been able to determine the true roles of Bitex, MTechnology and Daletski. Once ADVAA's and Retina-X's representations are accepted (subject to and post-discovery challenge), the resolution of Bitex's motion to intervene and ADVAA's motion to set aside the defaults becomes straightforward.

**A.**     ***Bitex's Motion to Intervene***

Bitex argues that, as the asserted vendor and owner of mSpy software and owner of the "mspy" domain name and www.mspy.com website, it has a right to intervene under Federal Rule of Civil Procedure 24(a)(2) ("Intervention of Right") or at least should be allowed to intervene under Federal Rule of Civil Procedure 24(b)(1)(B) ("Permissive Intervention"). Docs. 45, 52. Retina-X disagrees, contending that Bitex has failed to make the requisite showing for either intervention of right or permissive intervention. Doc. 47.

*1.     Intervention of Right*

Rule 24(a)(2) provides that, on timely motion, a court must permit anyone to intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Rule 24(a)(2) "set[s] bounds that must be observed. The original parties have an interest in the prompt disposition of their controversy and the public also has an interest in efficient disposition of court business." *Fox v. Tyson Foods, Inc.*, 519 F.3d 1298, 1302 (11th Cir. 2008) (internal quotation marks omitted). But at the same time, "[a]ny doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action." *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993).

As the language of Rule 24(a)(2) indicates, a court must allow a movant to intervene if it establishes that **(1)** its motion is timely, **(2)** it has an interest relating to the property or transaction that underlies the case, **(3)** it is situated in such a way that the disposition of the case, as a practical matter, may impede or impair its ability to protect its interest, and **(4)** the parties will not adequately protect its interest. *Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 910 (11th Cir. 2007). Retina-X argues that Bitex has not established the first, second, and fourth prerequisites. Doc. 47 at 6−10.

a.   Timeliness

To determine the timeliness of a motion to intervene, a court considers: **(1)** the time between when the movant sought to intervene and when it had known or reasonably should have known of its interest in the case (in other words, when it fathoms or should perceive the potential impact that a case may have on its interest, *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264−67 (5th Cir. 1977)); **(2)** the extent of prejudice to the existing parties resulting from the movant's delay (in other words, the prejudice that would result from the movant's failure to request intervention as soon as it had known or reasonably should have known of its interest in the case, *id.* at 265); **(3)** the extent of prejudice to the movant if the court denies the motion; and **(4)** whether unusual circumstances militate for or against a timeliness finding (for example, if a movant provided reasonable justification for its delay, *id.* at 266). *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002). "Timeliness is not a word of … precisely measurable dimensions. The requirement of timeliness must have accommodating flexibility toward both the court and the

litigants if it is to be successfully employed to regulate intervention in the interest of justice." *Id.* (quotation marks omitted).

Applying those standards in *Chiles v. Thornburgh*, the Eleventh Circuit found timely a motion to intervene filed seven months after the original complaint, three months after a motion to dismiss, and before discovery had begun. 865 F.2d 1197, 1213 (11th Cir. 1989). In support of that finding, the Eleventh Circuit cited a case in which the former Fifth Circuit had found timely a motion to intervene filed more than one year after the original complaint because "there had been no legally significant proceedings other than the completion of discovery and [the] motion would not cause any delay in the process of the overall litigation." *Id.* (*citing Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1125–26 (5th Cir. 1970)).

To establish timeliness, Bitex contends that Retina-X made no effort to serve it with the complaint despite indisputably having possessed its contact information from the trademark-infringement notice that Retina-X had sent to Avangate and that Retina-X had misrepresented an inability to serve it when Retina-X moved to amend its original complaint to sue only ADVAA. Doc. 45 at 1, 3–4. Observing that Retina-X had known that Bitex was the vendor of mSpy software at the time of amendment, it explains that it had reasonably assumed that Retina-X would not have dropped it from the case if a controversy between them over the mSpy software remained. *Id.* at 7–8. Having never been served with the complaint and having not been sued in the amended complaint, Bitex asserts, it "did not appreciate the potential significance and the potential impact of the continuing litigation" between Retina-X and ADVAA

14

on its interest in the mSpy software until March 2014, when it consulted a lawyer in the United States, who immediately referred the case to its current counsel, who immediately filed the motion to intervene. *Id.* at 8. Bitex argues that Retina-X cannot claim prejudice because Retina-X "has no legitimate interest in obtaining an injunction and an award of damages from a defendant that does not own the intellectual property rights to mSpy software and is not the real party in interest in the case." *Id.*

Retina-X responds that the motion is untimely because Bitex knowingly and without justification waited until after ADVAA had twice defaulted before trying to intervene. Doc. 47 at 1, 7–8. Retina-X argues that it will be prejudiced by Bitex's failure to intervene sooner because, during the delay, ADVAA has continued to engage in trademark infringement and unfair competition. *Id.* at 7–8.

Bitex could not have moved to intervene until, at the earliest, January 15, 2014, when the Court granted Retina-X's motion for leave to file the amended complaint that dropped Bitex as a defendant and directed the clerk to file the amended complaint attached to the motion as the operative pleading. Doc. 31. Retina-X represents that it served ADVAA with the amended complaint on January 14, 2014, Doc. 35 (though, as an aside, it is unclear why it served ADVAA with a pleading that the Court had not yet authorized). Bitex moved to intervene 71 days after the Court's order allowing amendment, on March 27, 2014. Doc. 45.

Seventy-one days is not too long to receive notice of the amended complaint, review the amended complaint, consider the ramifications of having been dropped

from the case, consult with counsel, hire Florida counsel, and prepare, review, and file a motion to intervene. Furthermore, a 71-day delay will not unduly prejudice Retina-X because nothing significant has occurred in the case and discovery has not yet started. *See Chiles,* 865 F.2d at 1213. Although Retina-X claims undue prejudice because ADVAA has allegedly continued to infringe and unfairly compete during those 71 days, its claim is undermined by the fact that it had waited two years from its original cease-and-desist letter (July 2011), and more than one year after filing notices of trademark infringement with the merchant-service providers (January and April 2012), *see* Doc. 38-1 at 5–6; Doc. 47 at 3, to file its original complaint (July 2013, *see* Doc. 1), and waited a month to prompt the Court's consideration of the original motion for preliminary injunction, and then only in response to the Court's denial of it in light of the lack of activity that would undermine a finding of immediate, irreparable harm. Doc. 8. Furthermore, Retina-X, if successful, presumably can recover damages suffered as a result of infringement during those 71 days. Bitex, on the other hand, would be prejudiced by denial of intervention because it would not be able to defend against Retina-X's claims that use of the MSPY mark constitutes infringement or that Bitex had been working in concert with ADVAA to infringe or unfairly compete. For those reasons and because no unusual circumstances militate against a timeliness finding, the motion is timely.

b.   <u>Sufficient Interest</u>

A movant's interest relating to the property or transaction that underlies the case must be "direct, substantial and legally protectable." *Hawes v. Gleicher,* 745 F.3d

1337, 1339 n.5 (11th Cir. 2014). A legally protectable interest requires more than an economic interest; substantive law must recognize the interest as belonging to or being owned by the movant. *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005). To decide if a movant has a legally protectable interest, a court must be flexible, with focus on the particular facts and circumstances of the case. *Huff v. Comm'r of IRS*, 743 F.3d 790, 796 (11th Cir. 2014).

Bitex contends that, as the owner and vendor of the mSpy software and the owner of the "mspy" domain name and the mspy.com website, it has a direct, substantial, and legally protectable interest relating to the property—the MSPY mark—underlying the case. Doc. 45 at 2, 8–9; Doc. 52 at 1–2. That Retina-X named Bitex in the original complaint, originally sought a preliminary injunction against it, and dropped it as a defendant only because of purported service-of-process issues, Bitex continues, shows that Retina-X "well knows" that it has the requisite interest in the case. Doc. 52 at 2.

Contending that Bitex just receives money for mSpy product sales while ADVAA and MTechnology provide online marketing for mSpy products, Retina-X argues that Bitex's interest is only economic, while simultaneously conceding that it has never been able to determine Bitex's role and that Bitex obtained a legal claim to the MSPY mark in the United States when it filed an application to register the MSPY mark. Doc. 47 at 2, 5, 8–9. Based on its only-economic-interest argument, Retina-X asserts that this case is like *Mt. Hawley*, in which the Eleventh Circuit held that the interest of the representative of a drowning victim's estate had only an

17

economic interest—not a legally protectable interest—in a policy considered in a declaratory-judgment action by an insurer against the owner of the property where the drowning had occurred, 425 F.3d at 1311. Doc. 47 at 9.

Accepting Bitex's representations that it is the vendor and owner of the mSpy software and the owner of the "mspy" domain name and the www.mspy.com website, Doc. 45 at 8–9; Doc. 52 at 1−2, which is not undermined by Retina-X's suggestion to the contrary given that Retina-X admits that it has never been able to determine Bitex's true role, Doc. 47 at 5, and further accepting Retina-X's concession that Bitex obtained a legally protectable interest in the MSPY mark when it applied to register the MSPY mark, Doc. 47 at 9, Bitex, through those interests in the MSPY mark, has a direct, substantial, and legally protectable interest in the intellectual property that is the subject of this case (the MSPY mark). With more than an economic interest at stake, *Mt. Hawley* is not an analogous case as Retina-X contends; more so is *CIBA Vision Corp. v. De Spirito*, in which the district court allowed a movant with a claimed ownership interest in domain names to intervene in a case involving trademark-infringement claims relating to marks in those domain names. No. 1:09-cv-01343-JOF, 2010 WL 553233, at *10–11 (N.D. Ga. Feb. 10, 2010) (unpublished).

That Bitex applied to register the MSPY mark on the same day that it moved to intervene or that the USPTO might reject the registration as it had done with ADVAA's similar attempt does not undermine that conclusion because a legally protectable interest in a trademark can arise from use absent registration, *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1320 (11th Cir. 2011), and

18

Retina-X does not dispute that Bitex is the owner of the "mspy" domain name and the www.mspy.com website. Thus, Bitex has a direct, substantial and legally protectable interest in the property (the MSPY mark) involved in this case.

c.    Impairment of Interests

Whether a movant is situated in such a way that the disposition of the case, as a practical matter, may impede or impair its ability to protect his interest is "closely related" to the nature of its interests. *Chiles*, 865 F.2d at 1214. "Where a party seeking to intervene … claims an interest in the very property and very transaction that is the subject of the main action, the potential stare decisis effect may supply that practical disadvantage which warrants intervention as of right." *Id.*

Bitex claims an interest in the property (the MSPY mark) involved in this case. A ruling in this case that the MSPY mark infringes on Retina-X's MOBILE SPY mark could have persuasive value in any later lawsuit between Retina-X and Bitex, and Retina-X does not contend otherwise. Furthermore, as Retina-X acknowledged in its supplemental brief supporting its renewed motion for a preliminary injunction, an injunction is binding not only on the parties to the action, but also on those "in active concert or participation with them who receive actual notice of the order." *See* Doc. 22 at 2 (quoting *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 13–14 (1944)). In other words, Retina-X has argued that an injunction against ADVAA would also bind others acting in concert with ADVAA—a class that, according to the original complaint, Doc. 1 at ¶¶ 7, 14–16, includes Bitex. Thus, Bitex is situated in such a way

that the disposition of this case, as a practical matter, may impede or impair its ability to protect its interests in the MSPY mark.

d.    Protection of Interests

A court will presume adequate representation when an existing party seeks the same objectives as the movant. *Clark v. Putnam Cnty.*, 168 F.3d 458, 461 (11th Cir. 1999). "But the presumption is weak; in effect, it merely imposes upon the proposed intervenors the burden of coming forward with some evidence to the contrary." *Id.* If the movant satisfies that burden, "the court returns to the general rule that adequate representation exists 'if no collusion is shown between the representative and an opposing party, if the representative does not have or represent an interest adverse to the proposed intervenor, and if the representative does not fail in fulfillment of his duty.'" *Id.* (quoting *Falls Chase,* 983 F.2d at 215). "Showing any of these factors is not difficult." *Id.* The "requirement … is satisfied if the [movant] shows that representation of his interest may be inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (internal quotation marks omitted).

Bitex argues that ADVAA cannot adequately represent its interests because it is not an actively operating company and does not own the mSpy software, the intellectual property rights to the mSpy software, the "mspy" domain name, or the www.mspy.com website. Doc. 45 at 11; Doc. 52 at 2−3. Retina-X responds that ADVAA can adequately represent Bitex's interests because ADVAA is a United States entity registered in California and doing business in the United States,

markets and distributes mSpy products, and had previously represented to the USPTO that it owned the trademark rights to the MSPY mark. Doc. 47 at 10. Contending without elaboration that ADVAA had been making strategic decisions in defaulting, Retina-X adds that its defaults are not pertinent to whether it can adequately represent Bitex's interests. *Id.*

Bitex has satisfied its burden of showing that ADVAA's representation of its interests may be inadequate. The latest application for registration of the MSPY mark indicates that Bitex owns it. Doc. 47-3. Furthermore, in ADVAA's motion to set aside the defaults, it denies involvement with the MSPY mark or mSpy software and apparently intends to defend against Retina-X's claims primarily on that basis. *See* Doc. 56 at 6; Doc. 62 at 1–3. That ADVAA intends to defend on that primary basis— rather than on the merits of the infringement claim—satisfies Bitex's minimal burden of showing that representation of its interests in this case may be inadequate.

Having established the four prerequisites to intervention of right (timeliness, interest, impediment or impairment of that interest, and lack of adequate protection, *see Sierra Club, Inc.*, 488 F.3d at 910), the Court must permit Bitex to intervene.

2. *Permissive Intervention*

Rule 24(b)(1)(B) and (c) provide that, on timely motion accompanied by a pleading that sets out the claim or defense for which intervention is sought, a court may permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." In exercising its discretion, "the court must consider whether the intervention will unduly delay or prejudice the

adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The timeliness standard is more lenient under the intervention of right standard. *Stallworth*, 558 F.2d at 266. And even if the motion is timely and a common question of law or fact exists, a court may deny intervention in the sound exercise of its discretion. *Chiles*, 865 F.2d at 1213.

Bitex asks the Court to permit it to intervene if the Court concludes that it does not have a right to intervene. Doc. 45 at 11–12. Beyond reasserting the arguments concerning timeliness and prejudice that it had made in response to Bitex's argument that it is entitled to intervention of right, Retina-X observes that Bitex did not include with its motion a pleading that sets out the claim or defense for which intervention is sought. Doc. 47 at 11–12. Bitex remedied that omission in its permitted reply while also contending that Retina-X's inclusion of Bitex in the original complaint and Bitex's detailed motion for intervention obviates the need for such a pleading. Docs. 52, 52-1.

Even under a more stringent standard, for the reasons stated above, Bitex's motion to intervene was not too late, Retina-X would not be unduly prejudiced by any delay, Bitex would be prejudiced by denial of intervention, and no unusual circumstances militate against a timeliness finding. Furthermore, Bitex has a claim concerning its continued use of the MSPY mark that shares with this case a common question of law or fact; specifically, whether the MSPY marks infringes on the MOBILE SPY mark. With the timeliness, common-question, and no-undue-prejudice

prerequisites satisfied, and without an apparent good reason to do otherwise, permissive intervention is warranted if intervention of right is not. Doc. 45.

**B.      *ADVAA's Motion to Set Aside the Defaults***

ADVAA moves to set aside the defaults against it, pointing to Mr. Ausiannikau's declaration and arguing that its failure to respond was the result of his understandable mistake. Docs. 56, 57, 62. Retina-X challenges Mr. Ausiannikau's representations and argues that the ten-month delay in ADVAA's appearance evidences "intentional lack of diligence, willfulness and gross neglect" that militates against setting aside the defaults. Doc. 58 at 1; Doc. 65.

Federal Rule of Civil Procedure 55(c) provides that a "court may set aside an entry of default for good cause." That just means that a court may set aside an entry of default "if the defaulting party can provide a good reason for the district court to do so." *African Methodist Episcopal Church, Inc. v. Ward*, 185 F.3d 1201, 1202 (11th Cir. 1999). Although defaults are disfavored because of the strong policy of deciding cases on their merits, *In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003), absent a good reason to do so, setting aside an entry of default is unwarranted. *African Methodist*, 185 F.3d at 1202. The standard for setting aside default is less rigorous than the standard for setting aside default judgment. *EEOC v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990).

"'Good cause' is a mutable standard, varying from situation to situation. It is also a liberal one—but not so elastic as to be devoid of substance." *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d

948, 951 (11th Cir. 1996) (internal quotation marks omitted). While "good cause" is "not susceptible to a precise formula," courts commonly consider **(1)** whether the default was culpable or willful, **(2)** whether setting it aside would prejudice the opposing party, **(3)** whether the defaulting party presents a meritorious defense, and **(4)** whether the defaulting party acted promptly to correct its default. *Id.* That setting aside a default will delay a plaintiff's possible recovery is not sufficient, on its own, to bar relief. 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2699 (3d ed. 2004) (citing cases).

1.   *Culpability*

ADVAA observes that as a layman and non-native English-speaker, and because both the USPTO proceedings and this case involve the MOBILE SPY and MSPY marks, Mr. Ausiannikau understandably conflated the two proceedings and reasonably relied on the firm he had engaged for the USPTO proceedings to respond on ADVAA's behalf as it had been doing. Doc. 56 at 5. Retina-X contends that Mr. Ausiannikau is not credible because trademark filings ordinarily would be sent to an applicant's lawyer and the ones in this case did not mention Retina-X or the MOBILE SPY mark on the front pages, he did not state that he forwarded the emails concerning this case to the trademark attorneys, and his ability to create a company, obtain a registered agent, and submit a trademark application cast doubt on his claim of ignorance of United States law. Doc. 58 at 5, 8–10.

Mr. Ausiannikau has offered a reasonable and credible explanation for ADVAA's initial failures to appear. Contrary to Retina-X's suggestion, that he used

simple online services to register ADVAA and the MSPY mark do not evince any special knowledge that would have helped him here. While the summonses did warn him that the case had been filed and that ADVAA had to answer the complaint, Doc. 58 at 4, it was reasonable for him to assume that Abhyanker P.C. would do so because the firm had just been representing ADVAA with respect to the MSPY mark, had received documents directly from the USPTO, and had not been particularly communicative. Furthermore, his representation that he thought the case documents concerned the trademark proceeding comports with his representation that ADVAA's sole activity was filing the application for the MSPY mark; he would expect only trademark-application-related documents if that is all ADVAA did. In short, ADVAA did not act in an intentional or culpable way.

2.    *Prejudice*

ADVAA argues that Retina-X will not be prejudiced if the Court sets aside the defaults because it will still be able to pursue its claims and nothing of consequence has happened in the case. Doc. 56 at 5–6. It further argues that any prejudice that Retina-X would suffer arises from its own failure to sue the real party in interest. *Id.* As with the motion to intervene, Retina-X contends that it will be prejudiced by the continued use of the MSPY mark by "ADVAA and its cohorts" and that setting aside the defaults will only delay justice. Doc. 58 at 14–15. But Retina-X will not be prejudiced by setting aside the defaults. As ADVAA observes, it may continue to pursue its claims, and, furthermore, assuming intervention by Bitex, allowing ADVAA to defend the case on its merits alongside it will not cause any delay.

3.      *Meritorious Defense*

A defendant has a meritorious defense if it raises a good defense at law. *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983). Thus, whether a defense is meritorious does not depend on its likelihood of success. *Id.*; *Argoitia v. C&J Sons, LLC*, No. 13-62469-Civ, 2014 WL 1912011, at *2 (S.D. Fla. May 13, 2014) (unpublished). Defenses of lack of a suable entity, *Bonaventure v. Butler*, 593 F.2d 625, 626 (5th Cir. 1979), or denial of a relationship creating liability, *Turner v. Salvatierra*, 580 F.2d 199, 201 (5th Cir. 1978), may be good cause to set aside a default.

ADVAA argues that it has a meritorious defense; specifically, that it does not have any ownership interest in the MSPY mark or software, and it is not involved in marketing, distributing, or selling the product. Doc. 56 at 6. Retina-X responds that ADVAA has not identified any of the standard defenses to a trademark-infringement claim. Doc. 58 at 10–12. ADVAA replies that its allegations establish that it did not use the MSPY mark, which is a defense that would negate an element of Retina-X's claims, and it also argues that the mark does not infringe on the plaintiff's mark in any event. Doc. 62. Retina-X responds that the USPTO actions ADVAA cites had been preliminary and wrongly decided. Doc. 65.

ADVAA has presented a legally recognized defense; specifically, that it did not use the MSPY mark in commerce. *See* Doc. 56 at 6; Doc. 62 at 1–3. Each of Retina-X's claims—trademark infringement under 15 U.S.C. § 1114, unfair competition under 15 U.S.C. § 1125(a), and common-law unfair competition—requires a plaintiff to

prove that the defendant used or adopted the mark or a confusingly similar one. *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008) (trademark infringement); *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir. 1997) (federal unfair competition); *Anderson v. Upper Keys Bus. Grp., Inc.*, 61 So. 3d 1162, 1167–68 (Fla. 3d DCA 2011) (common-law unfair competition). ADVAA's claims of a lack of involvement with the mSpy software or the MSPY mark therefore provide, at a minimum, a suggestion of a defense. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 n.4 (5th Cir. 1979) (stating that "a hint of a suggestion of a meritorious defense is sufficient"; finding that defendant's statement denying writing letters that formed principal basis of plaintiffs' case was a valid defense). Mr. Ausiannikau states that ADVAA only helped to file the trademark application, and that it did not otherwise use the mark in any capacity. *See* Doc. 57 ¶ 15. If true, ADVAA's defense would establish that it did not use or adopt the MSPY mark at all; thus, the defense would completely bar its liability. As such, ADVAA has presented a meritorious defense. *C.f. Turner*, 580 F.2d at 201 (denial of a relationship creating liability may establish good cause).

Moreover, ADVAA asserts that the MSPY mark does not infringe on the Mobile Spy mark, as evidenced by the USPTO's recent issuance of the Examiner's Amendments for Bitex's trademark application for the MSPY and MY SPY marks stating, "The trademark examining attorney has searched the USPTO's database of registered and pending marks and has found no conflicting marks that would bar registration." Doc. 62 at 3; Doc. 62-2. Although Retina-X argues that the examiner

was wrong based on the USPTO's previous rejection of ADVAA's similar attempts to register the MSPY mark, Doc. 65 at 2–3, that argument highlights only a conflict of opinion. Because whether a defense is likely to succeed is immaterial, *see Argoitia*, *2014 WL 1912011 at \*2*, it makes no difference whether the recent USPTO actions provide strong support for ADVAA's defense.

4.      *Timing*

It appears that ADVAA waited up to two months after it had discovered its need to respond before it moved to set aside the entries of default. *See* Doc. 56 at 3 (stating that Mr. Ausiannikau was informed of need to respond after Bitex filed motion to intervene on March 27, 2014). But, again, any delay has not prejudiced Retina-X because the case is still in its early stages and discovery has not started. *See Hinson v. Webster Indus.*, 240 F.R.D. 687, 693 (M.D. Ala. 2007) (setting aside default where defendant's reason for defaulting was plausible and plaintiff would not be prejudiced because court had not entered scheduling order and no discovery had occurred, even though defendant did not move to set aside default until nine months after response was due).

In short, because ADVAA's delay in appearing was not willful, Retina-X will not be unduly prejudiced by setting aside the defaults, ADVAA presents two meritorious defenses, and ADVAA's delay in appearing was not so great as to compel otherwise, granting ADVAA's motion to set aside the defaults, Doc. 56, is warranted.

**C.**   ***Retina-X's Motions for Default Judgment and Preliminary or Permanent Injunction***

Setting aside the defaults against ADVAA will moot Retina-X's motion for default judgment, Doc. 44, and therefore warrant denial of that motion. If the Court denies ADVAA's motion to set aside the defaults but allows Bitex to intervene, it should defer ruling on the motion for default judgment until after the merits of the claims against Bitex are resolved. *See Gulf Coast Fans, Inc. v. Midwest Elecs. Importers, Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984) (judgment should not be entered against defaulting defendant where jointly liable or similarly situated non-defaulting defendant prevailed on merits); *see also* Wright & Miller § 2690 (when multiple defendants have closely related defenses, "entry of judgment … should await an adjudication of the liability of the nondefaulting defendants"). If the Court denies both ADVAA's motion to set aside the defaults and Bitex's motion to intervene, I stand ready to file a report and recommendation on the merits of default judgment.

All of Retina-X's motions for injunctions, including its latest one, which remains pending, were based on its inferences concerning the roles and relationships of the originally named defendants gleaned from USPTO filings and internet searches. The entry of ADVAA and Bitex into the case, and the representations that they have made, conflict with those inferences. If the Court allows Bitex to intervene and sets aside the defaults against ADVAA as recommended, termination of Retina-X's third motion for a preliminary or permanent injunction, Doc. 36, with permission to file, if desired, another amended one that considers the new posture of the case and representations of ADVAA and Bitex, is warranted, though the Court's concern about

Case 3:13-cv-00897-MMH-PDB   Document 66   Filed 08/21/14   Page 30 of 31 PageID 1442

the propriety of an injunction affecting MTechnology and Daletski, who have never

been served, remains.

## IV.   Conclusion

With the appearance of ADVAA and Bitex standing ready to defend against

the infringement and unfair-competition claims, the case is ready to move forward.

For the reasons stated, I recommend that the Court:

1. **grant** Bitex's motion to intervene, Doc. 45, **direct** the clerk to add Bitex as a defendant, and **direct** Bitex to file its proposed answer, Doc. 52-1,[1] to Retina-X's amended complaint, Doc. 32, within 15 days of the Court's order granting the motion;

2. **grant** ADVAA's motion to set aside the defaults against it, Doc. 56, **direct** the clerk to terminate the defaults, Docs. 11, 41, and **direct** ADVAA to respond to Retina-X's amended complaint, Doc. 32, within 15 days of the Court's order granting the motion;

3. **deny as moot** Retina-X's second motion for default judgment against ADVAA, Doc. 44;

4. **direct** the clerk to terminate Retina-X's third motion for a preliminary or permanent injunction, Doc. 36, with permission to file, if desired, another amended one that considers the new posture of the case and the representations of ADVAA and Bitex; and

5. **order** the parties to file a case management report within 30 days of the Court's order on the pending motions.[2]

---

[1]A new complaint is unnecessary because Bitex answers the amended complaint as if it is the named defendant, and no allegation appears to apply only to ADVAA.

[2]Either party may file and serve specific written objections to this report and recommendation within 14 days of service. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 6.02(a). **The Court will not extend the 14-day period.** A party's failure to file a specific objection on any objectionable finding or conclusion may alter the scope of direct and appellate review of that finding or conclusion. *See* Fed. R. Civ. P. 72(b)(3); *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013).

**Entered** in Jacksonville, Florida, on August 21, 2014.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:      Counsel of Record